```
UNITED STATES DISTRICT COURT                    For Online Publication Only
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
KEVIN LINDER,

                        Plaintiff,
                                                MEMORANDUM AND ORDER
            -against-                           17-CV-727 (JMA)

ANDREW SAUL,¹
    Commissioner of Social Security,

                        Defendant.
----------------------------------------------------------X
```

**APPEARANCES:**

>   Christopher J. Bowes
>   Law Office of Christopher James Bowes
>   54 Cobblestone Drive
>   Shoreham, NY 11786
>       *Attorney for Plaintiff*
>
>   Matthew J. Mailloux
>   Richard P. Donoghue, United States Attorney
>   Eastern District of New York
>   271 Cadman Plaza East, 7th Floor
>   Brooklyn, NY 11201
>       *Attorneys for Defendant*

**AZRACK, United States District Judge:**

Plaintiff Kevin Linder ("Plaintiff") seeks review of the final administrative decision by the Commissioner of Social Security (the "Commissioner"), reached after a hearing before an administrative law judge ("ALJ"), denying his application for disability insurance benefits under Title II of the Social Security Act (the "Act"). Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 27, 29, 30, 31.) For the reasons discussed herein, Plaintiff's motion for judgment on the pleadings is GRANTED in part and DENIED in part, the

---

¹ Andrew Saul became the Commissioner of the Social Security Administration (the "SSA") on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul is substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this action.

1

Commissioner's cross-motion is DENIED, and the case is REMANDED for proceedings consistent with this opinion.

## I. BACKGROUND

In light of the Court's decision to remand this case for further proceedings, the Court recounts only the evidence relevant to that determination.

### A. Procedural History

Plaintiff worked at Brookhaven Locksmiths for sixteen years until he was terminated in January 2014. (Tr. 35.[2]) Shortly thereafter, on January 23, 2014, Plaintiff filed an application for disability insurance benefits with the SSA. Plaintiff alleged that he became unable to work on January 13, 2014 because of the disabling conditions of depression, arthritis in the hips and neck, and chronic severe headaches. (Tr. 148–51, 173.) On August 13, 2014, the SSA denied Plaintiff's application. (Tr. 68.) Plaintiff requested an administrative hearing and appeared with an attorney before ALJ Andrew S. Weiss on August 24, 2016. (Tr. 31–66.) Daryl Patrick Didio, Ph.D., a psychological expert, and Amy H. Leopold, a vocational expert ("VE"), testified at the hearing. (Tr. 41, 61.) In a decision dated September 26, 2016, ALJ Weiss denied Plaintiff's claim and found that he was not disabled under the Act. (Tr. 14–24.) The Appeals Council denied Plaintiff's request for review on January 6, 2017, at which point ALJ Weiss's decision became the final decision of the Commissioner. (Tr. 1–4.) This appeal followed. (ECF. No. 1.)

### B. Plaintiff's Background and Testimony

Plaintiff, a high school graduate, was born in 1964. (Tr. 34.) At the age of twenty, Plaintiff sustained multiple injuries in a serious car accident that left him comatose for nine days. Among his injuries were various fractures—including his second cervical vertebra, pelvis, right forearm,

---

[2] Citations to "Tr." refer to pages of the certified administrative record filed by the Commissioner. (ECF No. 32.)

and ten ribs—as well as a concussion, collapsed lung, a ruptured spleen, hemoperitoneum, and injuries to his left cheek and right jaw that required the insertion of wires. (Tr. 54, 254, 285.) When he testified at the September 2016 hearing, Plaintiff recounted that while recovering from the accident, his physician told him "to expect severe, chronic, frequent headaches." (Tr. 51.) He further testified that over thirty years after the accident, he "can't remember the last time [he] didn't have" a headache. (Id.)

In 1985, the year following the accident, Plaintiff received a locksmith certification. (Tr. 174.) He was most recently employed by Brookhaven Locksmiths for sixteen years until he was terminated in January 2014. (Tr. 35.) At the hearing, Plaintiff testified that he was terminated after failing to install hardware correctly because his "body was not letting me do my job to my boss's expectations." (Tr. 34, 56.)

Eight months before his termination, Plaintiff "realized that [he] had had a problem" and sought treatment for pain management and "psychiatric and therapy help." (Tr. 35.) At the time of the hearing, Plaintiff's "problem" persisted such that he could still not work. He testified that the "main reason" he was unable to work was a combination of factors, including "depression," a lack of "focus," and neck pain, headaches, and osteoarthritis in both hips that increases in severity based on the temperature and weather. (Tr. 37–41.)

During the hearing, Dr. Didio, a non-examining consultative expert, testified regarding Plaintiff's mental health treatment history. (Tr. 41.) From a psychiatric point of view, Dr. Didio explained, Plaintiff did not have "any problem with difficulty in social functioning," though Plaintiff did "have some physical limitations, which probably will not allow him to work on the road again, but that's for the orthopedist to comment on." (Tr. 44.) VE Leopold answered several hypotheticals regarding Plaintiff's past relevant work and capabilities, and testified that Plaintiff's

"skills are very, very specific to his . . . trade" and that his prior work was "not transferable to sedentary" work. (Tr. 62–63.)

**C.     The Commissioner's Decision**

In his September 26, 2016 decision, ALJ Weiss applied the five-step process required by the SSA's regulations, described below, and denied Plaintiff's application for benefits. (Tr. 14–24.) ALJ Weiss found that Plaintiff had met the insured status requirements of the Act, had not engaged in substantial gainful activity since the alleged onset date, and had the severe impairments of: (i) degenerative disc disease of the cervical and lumbar spines and (ii) osteoarthritis of the hips. (Tr. 16.) ALJ Weiss denied Plaintiff's application, however, and reasoned that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment, that he had the residual functional capacity ("RFC") to perform a full range of light work with certain exceptions, and, accordingly, he was capable of performing his past relevant work as a locksmith. (Tr. 19–23.)

With respect to step four, Plaintiff's RFC, ALJ Weiss found that Plaintiff "has the residual functional capacity to perform the full range of light work as defined in 20 CFR 404.1567(b)," except that he "can sit and stand/walk six hours in an eight-hour day and lift/carry ten pounds frequently and twenty pounds occasionally." (Tr. 19–20.) Further, ALJ Weiss determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely consistent with the medical evidence and other evidence in the record," including Plaintiff's activities of daily living. (Tr. 21.) In addition, ALJ Weiss credited the testimony of the VE, and noted that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of his past relevant work . . . the claimant is able to perform his past relevant

4

work as a locksmith, as generally performed in the national economy." (Tr. 23.) Therefore, ALJ Weiss found Plaintiff not disabled. (Tr. 24.)

In his instant motion, Plaintiff challenges two specific aspects of ALJ Weiss's determination: (i) that Plaintiff lacks the RFC to perform light work, and (ii) that he cannot return to his past relevant work. (See Pl.'s Mem., ECF No. 27 at 13, 17.)

## II. DISCUSSION

### A. Social Security Disability Standard

Under the Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual is disabled when his "physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

The Commissioner's regulations set out a five-step sequential analysis by which an ALJ determines disability. See 20 C.F.R. § 404.1520. The analysis is summarized as follows:

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

Burgess v. Astrue, 537 F.3d 117, 120 (2d Cir. 2008) (quoting Green–Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)). At step four, the Commissioner determines a claimant's RFC before deciding if the claimant can continue in his or her prior type of work. 20 C.F.R.

§ 404.1520(a)(4)(iv). The claimant bears the burden at the first four steps; but at step five, the Commissioner must demonstrate that "there is work in the national economy that the claimant can do." Poupore v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

B.     **Scope of Review**

In reviewing a denial of disability benefits by the SSA, it is not the function of the Court to review the record de novo, but to determine whether the ALJ's conclusions "'are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard.'" Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998) (quoting Beauvoir v. Chater, 104 F.3d 1432, 1433 (2d Cir. 1997)). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). "'To determine whether the findings are supported by substantial evidence, the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which conflicting inferences can be drawn.'" Snell v. Apfel, 177 F.3d 128, 132 (2d Cir. 1999) (quoting Mongeur v. Heckler, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). Thus, the Court will not look at the record in "isolation but rather will view it in light of other evidence that detracts from it." State of New York ex rel. Bodnar v. Sec. of Health and Human Servs., 903 F.2d 122, 126 (2d Cir. 1990). An ALJ's decision is sufficient if it is supported by "adequate findings supported by evidence having rational probative force." Veino v. Barnhart, 312 F.3d 578, 586 (2d Cir. 2002).

Conversely, a remand for further proceedings is warranted in cases where the Commissioner has failed to provide a full and fair hearing, to make sufficient findings, or to have correctly applied the law and regulations. See Rosa v. Callahan, 168 F.3d 72, 82–83 (2d Cir. 1999); see also 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and

transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

**C.     Analysis**

Plaintiff challenges the Commissioner's decision for two reasons. First, Plaintiff contends, the Commissioner incorrectly found that Plaintiff had the physical capacity to perform light work because ALJ Weiss did not accord sufficient weight to the medical evidence in the record, particularly the findings of Plaintiff's treating physician, pain management specialist Uzma Nasir, M.D. ("Dr. Nasir"). (See Pl.'s Mem., ECF No. 27 at 13.) Second, Plaintiff argues that the VE misclassified Plaintiff's past relevant work as a locksmith instead of as either a "safe and vault service mechanic" or, alternatively, a "composite job" consisting of aspects of both a locksmith and a safe and vault service mechanic. (Id. at 17.) Plaintiff asserts that ALJ Weiss then relied on this misclassification to determine that Plaintiff was capable of performing his past relevant work. The Court will analyze each argument in turn.[3]

**1. RFC Analysis**

An RFC determination specifies the "most [a Plaintiff] can still do despite [the Plaintiff's] limitations." Barry v. Colvin, 606 F. App'x 621, 622 n.1 (2d Cir. 2015) (summary order); see Crocco v. Berryhill, No 15-CV-6308, 2017 WL 1097082, at *15 (E.D.N.Y. Mar. 23, 2017) (describing an RFC determination as indicating the "nature and extent" of a claimant's physical limitations and capacity for work activity on a regular and continuing basis) (citing 20 C.F.R. § 404.1545(b)).

---

[3] Because Plaintiff only challenges ALJ Weiss's determination regarding his physical RFC, the Court does not address ALJ Weiss's analysis regarding the mental component of Plaintiff's RFC.

"[T]he Commissioner must consider objective medical evidence, opinions of examining or treating physicians, subjective evidence submitted by the claimant, as well as the claimant's background, such as age, education, or work history." Crocco, 2017 WL 1097082, at *15; see also Barry, 606 F. App'x at 622 n.1 ("In assessing a claimant's RFC, an ALJ must consider 'all of the relevant medical and other evidence,' including a claimant's subjective complaints of pain.") (quoting 20 C.F.R. § 416.945(a)(3)). Accordingly, the RFC assessment is based on a review of the entire record. See 20 C.F.R. § 404.1527(d)(2). An RFC determination must be affirmed on appeal when it is supported by substantial evidence in the record. Barry, 606 F. App'x. at 622 n.1.

### a. Dr. Nasir's Opinion

The administrative record contains medical records documenting Dr. Nasir's treatment of Plaintiff's back, neck, and hip pain over several years since June 2, 2014. (Tr. 308–12, 323–27, 694–703, 713–15.) During Plaintiff's visit to Dr. Nasir on June 1, 2016, Dr. Nasir's treatment notes describe Plaintiff's symptoms as "moderate to severe restricted flexion, extension, lateral rotation and side bending" in his cervical spine, "mild to moderate restricted flexion, extension and lateral rotation" in his lumbar spine, "[t]horacic/lumber segmental restriction," and "[m]ild to moderate pain upon flexion, extension, internal rotation, external rotation" of his hip joint. (Tr. 700.) Dr. Nasir diagnosed Plaintiff with "cervicobrachial pain, muscle spasm, bilateral hip pain." (Tr. 701.) Dr. Nasir also noted that though Plaintiff reported "excellent relief" that "lasted for more than 6 months" following cervical DMB RFL injections, "symptoms are back and he can get benefit" with repeated injections. (Id.)

During Plaintiff's June 1, 2016 visit, Dr. Nasir also completed a "medical source statement" that documented his treatment and diagnoses of Plaintiff to date. (Tr. 713–15.) Dr. Nasir wrote that there was a prognosis of "chronic pain" and identified the following clinical

findings and objective signs: Plaintiff had a limited range of motion in his hip joint and cervical spine, he limped while walking, and he was limited in his physical activity. (Tr. 713.) Dr. Nasir also indicated that Plaintiff had the following symptoms: tenderness, antalgic gait, abnormal posture, reduced strength, an impaired range of motion, joint instability in his hip, spasms, impaired sleep, and headaches. (Id.) Dr. Nasir described Plaintiff's pain as "continuous," "constant," and ranging in severity from three to seven on a ten-point scale. (Id.) Dr. Nasir's record reflects that Plaintiff occasionally required a cane; could occasionally lift and carry eleven to twenty pounds in a competitive work situation; could occasionally climb, push/pull, and bend; and could never kneel or squat. (Tr. 714–15.) Dr. Nasir estimated that Plaintiff would likely be absent from work more than four times per month due to his impairments. (Id.)

ALJ Weiss accorded "little weight" to Dr. Nasir's opinion because it was "not supported by objective medical evidence and his opinion is largely conclusory in nature." (Tr. 21.) Further, ALJ Weiss reasoned, "clinical findings or diagnostic testing does not adequately support" Dr. Nasir's opinion because Plaintiff reported to Dr. Nasir that cervical DMB RFL injections provided him with "excellent" and "more than 80%" relief that lasted over six months. (Tr. 22.)

### b. The ALJ Failed to Apply the Treating Physician Rule in Weighing Dr. Nasir's Opinion

In weighing Dr. Nasir's opinion, the ALJ was bound by the "treating physician rule" that was in effect when Plaintiff filed his application. If a treating physician's opinion regarding the nature and severity of an individual's impairments is supported by "medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ will credit that opinion with "controlling weight." 20 C.F.R. § 404.1527(c)(2); Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). A treating physician's opinion "on the nature or severity of a claimant's impairments is binding if it is supported by

medical evidence and not contradicted by substantial evidence in the record." Selian v. Astrue, 708 F.3d 409, 418 (2d Cir. 2013). An ALJ must provide "good reasons" not to grant controlling weight to a treating physician's opinion. See Schaal v. Apfel, 134 F.3d 496, 503–04 (2d Cir. 1998). And, when a treating physician's opinion is not given controlling weight, the ALJ should "comprehensively set forth reasons for the weight assigned" to that opinion, considering the factors identified in the SSA regulations. Halloran, 362 F.3d at 33; see also 20 C.F.R. § 404.1527(c). These same factors are to be considered when evaluating other medical opinion evidence. For the reasons set forth below, ALJ Weiss failed to provide "good reasons" for not crediting Dr. Nasir's opinion with controlling weight.

ALJ Weiss failed to identify medical evidence in conflict with Dr. Nasir's opinion. Instead, ALJ Weiss noted that Plaintiff's "reported daily activities are greater than one might expect, given his allegations of total disability." (Tr. 22.) ALJ Weiss also emphasized a June 2014 CT scan of Plaintiff's cervical spine showing "advanced cervical degenerative disc disease with reversal of the cervical lordosis and multiple disc herniations and spondylitic ridges but no spinal cord or nerve root compression" and a June 2014 MRI of Plaintiff's hips showing "findings compatible with shattered pelvis from old trauma and mild osteoarthritis." (Tr. 21.) The decision offers no explanation as to how this objective medical evidence from 2014 conflicted with Dr. Nasir's later opinion in 2016. Further, both the CT scan and MRI from June 2014 are reflected in Dr. Nasir's notes, and there is no indication that Dr. Nasir ignored them when he formed his opinion two years later. (Tr. 308.)

Additionally, ALJ Weiss did not discuss why Dr. Nasir's opinion that Plaintiff reported 80% pain relief from the injections was dispositive in the RFC analysis. The purported 80% pain relief lacks context—including, for example, whether it refers to all of Plaintiff's reported pain, or

only pain in his cervical spine. Further, ALJ Weiss's analysis contains no explanation as to how this reported pain relief undermined Dr. Nasir's other diagnoses regarding Plaintiff's range of motion and ability to stand, sit, and walk. These other diagnoses from Dr. Nasir are vital for determination of Plaintiff's overall RFC. ALJ Weiss's "failure to provide 'good reasons' for not crediting Dr. [Nasir's] diagnosis by itself warrants remand." Selian, 708 F.3d at 419.

Thus, it appears that ALJ Weiss cherrypicked from Dr. Nasir's opinions. While ALJ Weiss credited Dr. Nasir's 2016 opinion regarding the effectiveness of Plaintiff's cervical DMB RFL injection treatment, he ignored Dr. Nasir's other opinions that Plaintiff's pain was "gradually . . . getting worse," "constant," and varied in severity from three to seven out of ten; that there was "moderate to severe restricted flexion, extension . . . rotation" in the hips and cervical and lumbar spines; that there was "segmental restriction" in the thoracic spine; that there was tenderness, antalgic gait, abnormal posture, reduced strength, impaired range of motion, joint instability, spasms, impaired sleep, and headaches; that Plaintiff occasionally required a cane; that Plaintiff could sit less than two hours, could stand/walk less than two hours, and required over four hours of rest lying down or reclining in a supine position in an eight hour working day; and that Plaintiff could never kneel or squat and could only occasionally push/pull, bend, and climb. (Tr. 694–715.)

An ALJ is certainly permitted to assign different weights to different portions of a medical opinion, but "when the ALJ uses a portion of a given opinion to support a finding, while rejecting another portion of that opinion, the ALJ must have a sound reason for this discrepancy." Artinian v. Berryhill, No. 16-CV-4404, 2018 WL 401186, at *8 (E.D.N.Y. Jan. 12, 2018). While in some cases, a reviewing court may be able to glean an ALJ's rationale from the record, this is not such a case. Cf. Petrie v. Astrue, 412 F. App'x 401, 406 (2d Cir. 2011) (summary order) (quoting

Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir. 1983)). ALJ Weiss failed to explain why he cherrypicked certain parts of Dr. Nasir's opinion to credit and ignored other aspects of it.

Additionally, ALJ Weiss credited an opinion that Dr. Nasir did not actually offer. He wrote that Dr. Nasir "opined that the claimant could sit four hours in an eight-hour day" and "stand/walk four hours in an eight-hour day." (Tr. 21.) In actuality, however, Dr. Nasir's records stated that Plaintiff could sit less than two hours and stand/walk less than two hours. (Tr. 714.) On remand, the Commissioner should clearly address Dr. Nasir's opinion regarding the length of time for which Plaintiff can sit, stand, and walk.

ALJ Weiss also did not explain how the only other physician whose opinion he considered regarding Plaintiff's physical limitations discredited or contradicted Dr. Nasir.[4] ALJ Weiss accorded "little weight" to the opinion of Andrea Pollack, D.O., who performed a consultative examination. (Tr. 21–22.) Dr. Pollack opined that Plaintiff had "marked restriction with bending, lifting, carrying, pushing, and pulling; moderate-to-marked restriction with squatting; and mild-to-moderate restriction with walking, standing, sitting, climbing stairs, and kneeling" as well as "mild restriction with reaching." (Tr. 21, 276.) She concluded that Plaintiff "should avoid operating heavy machinery and activities, which require heavy exertion, and activities which may put him at risk for fall." (Id.) As with Dr. Nasir, ALJ Weiss accorded "little weight" to the opinion of Dr. Pollack. (Tr. 21–22.) On remand, if the Commissioner continues to accord the opinions of both Dr. Nasir and Dr. Pollack "little weight," he should explain how each of these opinions is

---

[4] ALJ Weiss also accorded "some weight" to the opinion of medical consultant M. Brandt, M.D., who offered a psychiatric opinion that Plaintiff "had mild restrictions for activities of daily living, maintaining attention/concentration and in social functioning." (Tr. 22.) Since Plaintiff has only challenged his physical RFC, Dr. Brandt's opinion is not relevant to the instant analysis.

12

equally unpersuasive in the determination of Plaintiff's RFC in light of the treating physician rule.[5] The Commissioner should also consider whether it is necessary to call a non-examining expert to opine on Plaintiff's physical limitations.

### 2. Classification of Plaintiff's Past Relevant Work

Plaintiff next challenges ALJ Weiss's determination that Plaintiff "is able to perform his past relevant work as a locksmith, as generally performed in the national economy." (Tr. 23.) Plaintiff argues that the VE who testified at his hearing misclassified his previous position as a locksmith. (ECF No. 27 at 19.) Because he was a "roadman" and "outside tech" who hung steel doors and installed and repaired heavy safes, Plaintiff contends that the more accurate description of his prior position is "safe and vault service mechanic" or, alternatively, a composite job consisting of both locksmith and safe and vault service mechanic. (Id. at 17–19.) Someone with Plaintiff's RFC, Plaintiff suggests, could not work either as a safe and vault service mechanic or a composite job consisting of both locksmith and safe and vault service mechanic. (Id.)

On remand, the Commissioner may elicit testimony for purposes of considering whether to reclassify Plaintiff's past relevant work as a safe and vault service mechanic or a composite job consisting of both locksmith and safe and vault service mechanic. However, based on the record before this Court, ALJ Weiss does not appear to have erred in concluding that Plaintiff's past relevant work was a locksmith.

---

[5] On remand, the Commissioner is encouraged to expressly address all of the factors listed in the SSA regulations for purposes of evaluating opinion evidence. See 20 C.F.R. § 404.1527(c). If the Commissioner gives more weight to the opinion of a non-examining expert than to the opinion of Plaintiff's treating physician, Dr. Nasir, the Commissioner must clearly explain why it is appropriate to credit a physician who did not examine Plaintiff over one who did. See 20 C.F.R. § 1527(f)(2).

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS in part and DENIES in part Plaintiff's motion for judgment on the pleadings; DENIES the Commissioner's cross-motion; and REMANDS the case for further proceedings consistent with this opinion. The Clerk of Court is respectfully directed to enter judgment accordingly.

**SO ORDERED.**

Dated: January 14, 2020
Central Islip, New York

                                                  /s/ (JMA)
                                                  JOAN M. AZRACK
                                                  UNITED STATES DISTRICT JUDGE